UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO.: _____

**CITY BEVERAGE-ILLINOIS, LLC,**
d/b/a Lakeshore Beverage LLC, an
Illinois limited liability company,

    Plaintiff,

vs.

**VITAL PHARMACEUTICALS, INC.,**
a Florida corporation, d/b/a VPX and
**PEPSICO, INC.**, a New York corporation,

    Defendants.
_____/

## COMPLAINT

Plaintiff, City Beverage-Illinois, LLC, d/b/a Lakeshore Beverage LLC ("Lakeshore"), by and through its undersigned counsel, hereby files this Complaint against Defendants, Vital Pharmaceuticals, Inc., d/b/a VPX ("VPX") and PepsiCo, Inc. ("PepsiCo"), and alleges:

## NATURE OF THE ACTION

1. This action arises from VPX's blatant violations of its contractual obligations under its distributor agreement with Lakeshore and PepsiCo's intentional, unlawful and unjustified interference with Lakeshore's contractual relationship with VPX and Lakeshore's customers.

2. Defendants' wrongful conduct has caused and is continuing to cause ongoing and substantial damages to Lakeshore thereby entitling Lakeshore to compensatory damages, punitive damages, along with costs and attorney's fees.

## PARTIES, JURISDICTION AND VENUE

3. The parties are of diverse citizenship, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

4. Plaintiff, Lakeshore is a limited liability company duly organized and existing under the laws of the state of Illinois with its principal place of business located at 400 N. Elizabeth Street, Chicago, Illinois.

5. The members of Lakeshore are comprised of CBI RN Corp., CBI B. Corp. and Ideal Distributing Co., Inc.

6. Lakeshore member CBI RN Corp. is a corporation duly organized and existing under the laws of the state of Delaware with its principal place of business located at 7301 Parkway Drive, Hanover, Maryland and is therefore a citizen of Delaware and Maryland.

7. Lakeshore member CBI B Corp. is a corporation duly organized and existing under the laws of the state of Delaware with its principal place of business located at 7301 Parkway Drive, Hanover, Maryland and is therefore a citizen of Delaware and Maryland.

8. Lakeshore member Ideal Distributing Co., Inc. is a corporation duly organized and existing under the laws of the state of Tennessee with its principal place of business located at 2059 Wilma Rudolph Blvd., Clarksville, Tennessee and is therefore a citizen of Tennessee.

9. Defendant, VPX is a corporation duly organized and existing under the laws of the state of Florida with its principal place of business located at 1600 North Park Drive, Weston Florida and is therefore a citizen of Florida.

10. Defendant, PepsiCo, is a corporation duly organized and existing under the laws of the state of New York with its principal place of business located at 700 Anderson Hill Road, Purchase, New York and is therefore a citizen of New York.

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

12. VPX conducts business in this judicial district and is subject to personal jurisdiction in the state of Florida, specifically including the geographic area comprising this District.

13. PepsiCo is subject to personal general and specific jurisdiction in the state of Florida because PepsiCo engages in substantial and not isolated business activities in this state, including operating, conducting, engaging in, and carrying on business ventures in this state, including through several offices, among those are offices located in Miami and Riviera Beach, Florida, and because PepsiCo's activities in this state gave rise to the interference claims asserted herein.

14. Venue is proper in the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to this claim occurred in this district.

## THE VPX AND LAKESHORE AGREEMENT

15. VPX is a developer, manufacturer and seller of energy drinks and ready-to-drink dietary supplements.

16. Lakeshore is a wholesale distributor of alcoholic and non-alcoholic beverages, and is among other suppliers, a wholesaler distributor of beer, wine and spirits for Anheuser Busch-In Bev. ("AB").

17. On the 8th day of August 2018, Lakeshore entered into a distributor agreement with VPX (the "Agreement"). A true and accurate copy of the Agreement is attached as **Exhibit "A."**

18. The Agreement between VPX and Lakeshore is for the distribution of VPX's BANG® and REDLINE® beverage brands.

19. The Agreement provides in Section 1.2, that "…Distributor shall have the exclusive right to engage in the wholesale distribution of [VPX] Products… in the 'Territory.'"

20. The "Territory" includes all areas in the Illinois counties of Cook, DeKalb, DuPage, Grundy, Iroquois, Kane, Kankakee, Kendall, Lake, LaSalle, Livingston, Logan, McHenry, McLean, Putnam, and Will.

21. The Agreement in Section 3.3 allows VPX to terminate Lakeshore, without cause, subject to Section 3.2 and the buyout provisions in Section 3.3.

22. Section 3.2 of the Agreement provides:

Provided that the Party wishing to terminate this Agreement is not in breach of any of the terms and conditions contained in this Agreement, after the third anniversary date of the Agreement, either party may terminate this Agreement without Cause upon 90 days' written notice to the other Party.

23. The third anniversary of the Agreement is August 8, 2021, and 90 days thereafter is November 8, 2021.

## VPX'S IMPROPER TERMINATION OF AGREEMENT AND PEPSICO'S IMPROPER INTERFERENCE

24. PepsiCo is, along with some affiliates and bottlers, a distributor of non-alcoholic drinks.

25. In late March and early April of 2020 (if not earlier), VPX and PepsiCo began negotiations for PepsiCo and some of its affiliates to replace the AB wholesaler network as its distributors and for VPX to terminate each wholesaler in the AB wholesaler network. The AB wholesaler network consists of approximately 56 members (collectively the "AB Wholesaler Network").

26. During negotiations, and in bad faith as VPX did not have any cause to terminate the Agreement, VPX sent a letter to Lakeshore dated April 8, 2020, complaining of a lack of

performance ("Performance Letter"). A true and accurate copy of the Performance Letter is attached hereto as **Exhibit "B."**

27. VPX sent the Performance Letter in substantially the same form to nearly every wholesaler in the AB Wholesaler Network.

28. Lakeshore's counsel responded to the Performance Letter in a letter dated April 13, 2020, and alleged among other things:

> [T]he VPX Distributor Agreement between VPX and Lakeshore, VPX's historical and current conduct and the clear evidence that VPX's letter is a form letter undermines the idea that each distributor receiving this letter has "lost focus on the distribution of our portfolio of products, has failed to adequately support the portfolio and has experienced significant performance issues," for multiple reasons. Those reasons include, without limitation: 1) it appears that VPX intends to sell to a third party and is attempting to terminate its wholesalers without payment of the agreed upon compensation in the Distribution Agreement; 2) VPX fails to provide Lakeshore or any wholesaler any empirical or factual basis for any "significant performance issues;" 3) at no time has VPX sought to set performance goals for Lakeshore, including in a meeting as recently January of 2020; 4) at no time prior to the COVID-19 crises has VPX communicated to Lakeshore any performance concerns; 5) VPX fails to acknowledge that the COVID-19 crises has greatly limited channels for VPX Product to enter the marketplace; and 6) the Distribution Agreement only requires that Lakeshore commit to commercially reasonable efforts, which by definition takes into account that Lakeshore's efforts cannot transcend the significant economic downturn in the market.

A true and accurate copy of Lakeshore counsel's response to the Performance Letter is attached hereto as **Exhibit "C."**

29. Notwithstanding the response from Lakeshore, VPX announced to the public on April 28, 2020, without prior notice to Lakeshore or any other members of the AB Wholesaler Network that it had entered into a distribution relationship with PepsiCo and would replace the AB Wholesaler Network, including Lakeshore.

30. On April 27, 2020, VPX sent notice to Lakeshore terminating the Agreement ("Termination Notice"). A true and accurate copy of the Termination Notice is attached as **Exhibit**

"**D.**" Lakeshore received the Termination Notice after VPX's public announcement on April 28, 2020.

31.     On May 1, 2020 Lakeshore's counsel responded to the Termination Notice by issuing a notice of default (the "Default") alleging, among other breaches, that the Termination Notice violated the Agreement in one or more of the following ways:

  a. Section 3.2 of the Agreement restricts VPX from terminating the Agreement without cause until August 8, 2021.

  b. Section 3.2 of the Agreement also provides that VPX provide Lakeshore ninety (90) days written notice after August 8, 2021, if it seeks to terminate without cause and that VPX must pay Lakeshore the as provided in Section 3.3 to effectuate a termination.

  c. Lakeshore's damages also must include the entirety of its gross margin from the date of termination through August 8, 2021, plus 90 days.

  d. VPX also fails to account for any debts or unsold inventory it owes Lakeshore.

  e. The Agreement provides that until the wholesaler receives proper notice and the buyout compensation pursuant to Section 3.3, the exclusive territory rights of Lakeshore remain enforceable, Wholesaler is under no obligation to cede any territory and may further continue to distribute the Products.

  f. Notwithstanding Wholesaler's express contractual rights, VPX announced to the public on April 28, 2020, that PepsiCo has the distribution rights to BANG Energy "effective immediately," in violation of the Agreement.

  g. In further default of the Agreement, also on April 28, 2020, VPX sent correspondence to retailers in Lakeshore's territory advising retailers that they should coordinate future orders through PepsiCo.

A true and accurate copy of the Default is **Exhibit "E."**

32.     On May 6, 2020, Lakeshore's counsel provided VPX with all information the Agreement required to "buyout" Lakeshore's "distribution rights" and to compensate Lakeshore for damages which would occur from terminating the Agreement without cause prior to the Agreement's third anniversary (and without providing the requisite 90 days written notice

thereafter). Accordingly, Lakeshore provided VPX with its inventory depletion data from the requisite trailing twelve month period; the estimated gross profit it would incur through the Agreement's third anniversary date (and requisite notice period); current inventory on-hand; and its current billback balance.

33. VPX failed to cure its breaches as outlined in the Default.

34. On May 29, 2020, Lakeshore's counsel served PepsiCo and VPX with a cease & desist letter (the "Cease and Desist Letter") which reiterated that Lakeshore had the exclusive right to distribute VPX's products in the "territory" and that that PepsiCo must cease its interference with the Agreement. The letter also enclosed a copy of the Agreement. A true and accurate copy of the Cease and Desist Letter is attached hereto as **Exhibit "F."**

35. All conditions precedent to the filing of this action have been performed, waived or excused.

## COUNT I-BREACH OF CONTRACT
## (Against VPX)

36. Lakeshore realleges and incorporates paragraphs 1-35, as if fully set forth herein.

37. VPX breached the Agreement with Lakeshore by prematurely and in bad faith terminating the Agreement prior to the Agreement's third anniversary date and the provision of ninety (90) days' notice.

38. VPX, in furtherance of its breach, ceased shipping product to Lakeshore on or about June 1, 2020.

39. Also in furtherance of its breach, VPX is now distributing its BANG® products in Lakeshore's exclusive "territory" through PepsiCo.

40.     As a result of VPX's breaches of the Agreement, Lakeshore has been damaged, in an amount of at least $4,320,321.57 in expected gross profit accrued through the duration of first date available to buyout the Agreement without cause (November 8, 2021).

WHEREFORE, Plaintiff, City Beverage-Illinois, LLC, d/b/a Lakeshore Beverage respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Vital Pharmaceuticals, Inc., d/b/a VPX, for compensatory damages, pre-judgment interest, attorneys' fees pursuant to Section 8.8 of the Agreement, costs, and any other relief this Court deems just and proper.

## COUNT II-BREACH OF CONTRACT
### (Against VPX)

41.     Lakeshore realleges and incorporates paragraphs 1-35, as if fully set forth herein.

42.     Notwithstanding VPX terminating Lakeshore in favor of PepsiCo and Lakeshore providing VPX with all data necessary to "buyout" Lakeshore's rights under the Agreement, VPX has not paid Lakeshore any damages or any portion of the "buyout."

43.     The Agreement provides that the buyout shall be calculated by a formula inclusive of Lakeshore's trailing twelve months of unit sales incurred from selling VPX's products, multiplied by different numbers for each SKU sold ($4 per 12-pack of BANG® sold; $8 per 24-pack of BANG® sold; and $6 per 24-pack of REDLINE® sold).

44.     The buyout as calculated by using the trailing twelve month period retrospective from October 31, 2021 and accounting for the continuation of growth trends, is equal to at least $2,780,668.

45.     The trailing twelve month period retrospective from October 31, 2021, is the proper period to use under the Agreement's "buyout" formula because the Agreement only permits VPX

to "buyout" Lakeshore's distribution rights after the third anniversary date of the Agreement and after the expiration of ninety (90) days' thereof, which is November 8, 2021.

46. Alternatively, the buyout as calculated by using the trailing twelve month period retrospective from April 30, 2020, which is the last full twelve month period preceding PepsiCo's known interference in the market and is inclusive of the last full month of sales after Lakeshore received VPX's Termination Notice on April 30, 2020, is equal to at least $2,154,512.00.

47. Notwithstanding VPX's unlawful termination of Lakeshore, VPX has also failed to purchase Lakeshore's remaining inventory of VPX's brands on-hand. As of June 17, 2020, Lakeshore has unsold inventory in the amount of $692,318.00.

48. Lakeshore's inventory is higher than usual as VPX recently encouraged Lakeshore, in bad faith, to purchase an accelerated amount of inventory through an incentive program while knowing that it would be terminating Lakeshore only weeks later and before Lakeshore could sell all of its newly purchased inventory.

49. In further breach of the Agreement, VPX has failed to reimburse Lakeshore for "billbacks," comprised of samples Lakeshore has provided to consumers and retailers, direct payments from retailers to VPX and depletion allowances. This amount also includes a "billback" for the free product included in the large volume of inventory VPX induced Lakeshore to purchase immediately prior to termination. "Billbacks" continue to increase as Lakeshore depletes inventory and as of June 17, 2020, this amount totaled $430,988.22.

50. As a result of VPX's breaches of the Agreement, Lakeshore has been damaged in by the amounts of its unsold inventory, the "billbacks," and in an amount of least $2,780,668.00 as the amount of the buyout as defined in the Agreement.

WHEREFORE, Plaintiff, City Beverage-Illinois, LLC, d/b/a Lakeshore Beverage respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Vital Pharmaceuticals, Inc., d/b/a VPX, for compensatory damages, pre-judgment interest, attorneys' fees pursuant to Section 8.8 of the Agreement, costs, and any other relief this Court deems just and proper.

## COUNT III-TORTIOUS INTERFERENCE WITH CONTRACT
### (Against PepsiCo)

51. Lakeshore realleges and incorporates paragraphs 1-35, as if fully set forth herein.

52. On or about May 1, 2020, Lakeshore served the Default upon PepsiCo's registered agent in Florida and its corporate counsel in Purchase, New York. The Default provided PepsiCo's with notice of the existing and enforceable Agreement and Lakeshore's exclusive right to distribute VPX's products in a defined territory of Illinois pursuant to the Agreement.

53. At all times material hereto, PepsiCo knew and was fully aware of the existing and enforceable contractual relationship between Lakeshore and VPX.

54. Despite its knowledge of VPX's ongoing contractual obligations to Lakeshore and its receipt of the Default, PepsiCo intentionally and unjustifiably induced VPX through improper means to breach the Agreement in order to usurp Lakeshore's business.

55. Lakeshore learned shortly after its counsel served PepsiCo with the Default that PepsiCo notified some of Lakeshore's retailers, including Heinen's Fine Foods, that PepsiCo would immediately begin distributing VPX's products in lieu of Lakeshore.

56. On May 29, 2020, Lakeshore served PepsiCo with the Cease and Desist Letter which included a copy of the Agreement (Exhibit "F").

57. On June 2, 2020, Lakeshore served PepsiCo with more evidence of its interference, including an email dated May 26, 2020 from the "brand category manager" at Heinen's Fine Foods

which explained to the store's "grocery packaged managers" that PepsiCo will be their new distributor of VPX's BANG® products effective June 1, 2020.  A true and accurate copy of the June 2, 2020 correspondence is attached as **Exhibit "G."**

58.	Acting with reckless disregard, PepsiCo ignored Lakeshore's demands to cease its interference.

59.	On or about June 11, 2020, the Crystal Lake Gas Station, 770 Virginia Road, Crystal Lake, refused Lakeshore's delivery of VPX's products.  The gas station purchased VPX's BANG® products instead from PepsiCo, including an order on June 11, 2020.  A true and accurate copy of the receipt is attached as **Exhibit "H."**

60.	On or about June 17, 2020, the Thornton's convenience store in Algonquin, Illinois, refused Lakeshore's delivery of VPX's products.  The Thornton's convenience store purchased VPX's BANG® products instead from PepsiCo, including an order on June 17, 2020.  A true and accurate copy of the receipt is attached as **Exhibit "I."**

61.	On or about June 17, 2020, the Walmart store in Johnsburg, Illinois, refused Lakeshore's delivery of VPX's products.  The Walmart store purchased VPX's BANG® products instead from PepsiCo, including an order on June 17, 2020.  A true and accurate copy of the receipt is attached as **Exhibit "J."**

62.	Also, on or about June 25, 2020, the "Mini-Mart" store in Streator, Illinois, purchased VPX's BANG® products from PepsiCo instead of from Lakeshore.  A true and accurate copy of the receipt is attached as **Exhibit "K."**

63.	PepsiCo is increasingly "freezing" Lakeshore out of the "territory" such that retailers will no longer buy VPX's BANG® products from Lakeshore.

4812-3767-1874.1

64. PepsiCo further caused VPX to breach the Agreement by directing and ultimately executing distribution of VPX's BANG® beverage products through its wholesale network notwithstanding its knowledge of the Agreement.

65. PepsiCo's unlawful conduct caused Lakeshore to incur damages.

WHEREFORE Plaintiff, City-Beverage Illinois, LLC, demands judgment against the Defendant, PepsiCo, Inc. for compensatory damages, punitive damages, costs and any other relief this Court deems just and proper.

### COUNT IV -TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATTIONSHIPS
### (Against PepsiCo)

66. Lakeshore realleges and incorporates paragraphs 1-35 and paragraphs 52-63, as if fully set forth herein.

67. Despite its knowledge of Lakeshore's ongoing advantageous business relationships with respect to the sale of VPX's BANG® beverage products, PepsiCo intentionally, unjustifiably and through the use of improper means induced Lakeshore's customers to cease purchasing VPX's BANG® beverage products from Lakeshore.

68. PepsiCo also contacted Lakeshore's retailers while having knowledge of the Lakeshore's advantageous relationships with these retailers to wrongly state that it had the exclusive distribution rights to the VPX's BANG® products in the "territory."

69. Acting with reckless disregard, PepsiCo intentionally and unjustifiably induced these retailers to change their order process such that they could only purchase VPX's BANG® products from PepsiCo.

70. Among the identifiable and specific customers with whom Lakeshore possessed protectable and advantageous relationships with which PepsiCo interfered are those identified in paragraphs 57 and 59-62, above.

71. Notwithstanding its knowledge of these relationships, PepsiCo induced Lakeshore's customers to cease purchasing VPX's BANG® beverage products from Lakeshore and instead purchase them from PepsiCo.

72. PepsiCo's unlawful conduct in this regard caused Lakeshore to incur damages.

WHEREFORE Plaintiff, City-Beverage Illinois, LLC, demands judgment against the Defendant, PepsiCo, Inc. for compensatory damages, punitive damages, costs and any other relief this Court deems just and proper.

Dated: July 7, 2020                                                   Respectfully submitted,

/s/ William E. Davis
William E. Davis
(Florida Bar No. 191680)
Email: wdavis@foley.com
Mary Leslie Smith
(Florida Bar No. 774343)
Email: mlsmith@foley.com
**FOLEY & LARDNER LLP**
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131-2132
Tel:  305.482.8400
Fax:  305.482.8600

And

Dimitrios G. Christopoulos, Esq.
Illinois Bar No.: 6210127
Email: Dimitri@christopouloslaw.com
(pro hac vice motion to be filed)
Kevin O. Gerow, Esq.
Email: Kevin@christopouloslaw.com
Illinois Bar No.: 6301668

(pro hac vice motion to be filed)
**Christopoulos Law Group, LLC**
351 W. Hubbard Street, Suite 602
Chicago, Illinois 60654
Tel.: (312) 587-7594
Fax: (312) 577-0806

4812-3767-1874.1