UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 20-61353-CIV-MORENO

CITY BEVERAGE-ILLINOIS, LLC, d/b/a
LAKESHORE BEVERAGE LLC,

    Plaintiff,

vs.

VITAL PHARMACEUTICALS, INC. d/b/a
VPX,
    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS II & III

This case involves a contractual dispute arising out of the parties' agreement to distribute BANG and REDLINE energy drinks in certain counties in Illinois. Defendant Vital Pharmaceuticals, Inc. ("VPX") now moves to dismiss Counts II and III, breach of contract claims premised on VPX's alleged premature termination of the Distributor Agreement. Because § 3.3 of the agreement plainly provides for the agreement's termination prior to the agreement's three-year anniversary date, VPX's motion to dismiss is granted and Counts II and III are dismissed with prejudice.

### I.     BACKGROUND

Plaintiff City Beverage-Illinois, LLC ("Lakeshore") is a wholesale distributor of alcoholic and non-alcoholic beverages. VPX is a developer, manufacturer, and seller of energy drinks and ready-to-drink dietary supplements. On August 8, 2018, Lakeshore entered into the Distributor Agreement with VPX. Pursuant to the agreement, the distributor Lakeshore retained the exclusive right to engage in the wholesale distribution of VPX's BANG and REDLINE beverage brands in certain Illinois counties.

Lakeshore sues VPX for breach of the agreement and unjust enrichment. VPX now moves to dismiss Counts II and III. Count II alleges that VPX breached § 3.2 of the agreement, which prohibited a termination of the agreement by either party until the agreement's third anniversary date, August 8, 2021, with the terminating party providing 90 days' notice to the other party. Count III alleges that parol evidence is admissible to explain a latest ambiguity in § 3.3 of the agreement, namely, whether the parties intended to limit any exercise of VPX's buyout rights until the third anniversary of the agreement, with the terminating party providing the requisite 90 days' notice. According to Lakeshore, it is unclear whether § 3.3's introductory clause—"[p]ursuant to the notice provision in Section 3.2[]"—incorporates § 3.2 in its entirety, along with the three-year anniversary condition, or only the 90-day notice requirement.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely

2

allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

### III. DISCUSSION

VPX seeks to dismiss Counts II and III based on VPX's alleged premature termination of the agreement. The parties do not dispute that, pursuant to their agreement, Florida law applies to the interpretation of their agreement.

Neither does Lakeshore dispute that this Court can consider the terms of the agreement at this stage in determining whether Counts II and III may proceed. Rather Lakeshore contends that neither count should be dismissed because the agreement clearly prohibits VPX from terminating the agreement prior to its third anniversary date and, alternatively, a latent ambiguity exists as to whether VPX could invoke § 3.3's buyout and termination of the agreement prior to the third anniversary date and parol evidence is admissible to explain this ambiguity. The Court finds that the agreement plainly and unambiguously provides for the termination of the agreement "without cause at any time, in [VPX's] sole discretion" as long as it provides 90 days' notice and fair compensation to Lakeshore, therefore, Counts II and III are dismissed with prejudice.

### A. Count II

In Count II Lakeshore claims that VPX breached § 3.2 of the agreement by prematurely terminating the agreement prior to the agreement's third anniversary date and the earliest date that the 90 days' notice provision could be satisfied. VPX argues that Count II should be dismissed because § 3.3 of the agreement clearly provides for the agreement's termination prior to the third anniversary date, without cause, if VPX buys out Lakeshore's rights. The Court agrees with VPX.

Section 3.2 provides as follows:

> 3.2 Terminated Without Cause. Provided that the Party wishing to terminate this Agreement is not in breach of any of the terms and conditions

3

contained in this Agreement, after the third anniversary date of the Agreement, either Party may terminate this Agreement without Cause upon 90 days' written notice to the other Party.

While the Court notes that, at first glance, it would appear VPX has breached § 3.2, as the parties entered into the agreement on August 8, 2018 and the earliest a party could initiate a termination of the agreement without cause would be on August 8, 2021, with the earliest termination occurring on November 8, 2021, after 90 days' notice. As alleged, VPX terminated the agreement on April 27, 2020. However, Lakeshore's reading of § 3.2 renders § 3.3 a nullity, which provides for an alternative means for the termination of the agreement by the manufacturer, VPX.

Section 3.3 provides, in relevant part:

> 3.3 Termination by Manufacturer Without Cause Buyout. Pursuant to the notice provision in Section 3.2, Manufacturer may terminate this Agreement without cause at any time, in its sole discretion, by buying out Distributor's rights. The fair compensation to be paid to Distributor in the event Manufacturer opts to exercise its buyout right hereunder shall be the product of multiplying: (a) the number of standard unit cases of Manufacturer's Products sold by Distributor in the 12-month period immediately preceding notice of Manufacturer's exercise of its buyout right hereunder if the Agreement has been in effect for a full 12 months or the number of cases that the Distributor has resold during the time that the Agreement has been in effect if the Agreement has been in effect for less than 12 months, whichever is shorter; and (b) $4.00 per 12-count case of BANG sold, $8.00 per 24-count case of BANG sold, and $6.00 per case of Redline RTD sold. (D.E. 26-1, § 3.3).[1]

VPX contends that the agreement's language, which is plain and unambiguous, provides for the termination of the agreement prior to the third anniversary date. Three contextual canons of construction support VPX's reading of the agreement: (1) the whole-text canon; (2) the surplusage canon; and (3) the harmonious-reading cannon. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* §§ 24, 26-27 (2012). Each of these canons of construction are recognized under Florida law. *See TRG Columbus Dev. Venture, Ltd. v. Sifontes*,

---

[1] As pointed out by both parties, there are two § 3.3 in the agreement. The relevant § 3.3 to this issue is the first one, titled "Termination by Manufacturer Without Cause Buyout."

4

163 So. 3d 548, 552 (Fla. 3d DCA 2015) (recognizing whole-text and surplusage canons); *Morgan v. State*, 295 So. 3d 833, 836 (Fla. 4th DCA 2020) (recognizing harmonious-reading canon).

Under the whole-text canon, "[t]he text must be construed as a whole." *See* Scalia & Garner, *Reading Law* § 24, at 167. "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Id.* Under this canon of construction, when construing laws, or, as here, a private document, context matters: "Context is a primary determinant of meaning. A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts." *Id.* Given this well-settled canon of construction, the Court declines an invitation to read § 3.2 in isolation, which would only permit a party to terminate the agreement without cause after 90 days' written notice to the non-terminating party after the agreement's third anniversary date. Such a construction would ignore the language of § 3.3, contrary to the surplusage canon.

The surplusage canon of construction provides that "[i]f possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *See* Scalia & Garner, *Reading Law* § 26, at 174. Similarly, under Florida, law, "a court may not interpret a contract so as to render a portion of its language meaningless or useless." *Sifontes*, 163 So. 3d at 552 (citing *Moore v. State Farm Mut. Ins. Co.*, 916 So. 2d 871, 877 (Fla. 2d DCA 2006)). Here, permitting Count II to proceed under Lakeshore's reading of § 3.2 would cause § 3.3 and its mechanism for the manufacturer (VPX) to initiate a buyout "without cause at any time, in its sole discretion" to have no consequence or render it meaningless or useless.

5

Moreover, language pertaining to the computation of the fair compensation to be paid "if the Agreement has been in effect for less than 12 months," pursuant to a buyout under § 3.3, would also be rendered meaningless. Under Lakeshore's reading, VPX would only be able to initiate the termination of the agreement without cause three years after the agreement's anniversary date.

The harmonious-reading canon also supports a reading of the agreement that provides for two mechanisms for its termination. That canon provides that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." *See* Scalia & Garner, *Reading Law* § 27, at 180; *see also Morgan*, 295 So. 3d at 836. Here, the Court finds that both sections can be read harmoniously, as each section provides for an independent mechanism for the termination of the agreement. Under § 3.2, if the party seeking termination of the agreement is not in breach, that party may terminate the agreement after its third anniversary date, so long as it provides 90 days' notice to the non-terminating party. Under § 3.3, the manufacturer, VPX here, can terminate the agreement without cause prior to the time enumerated in § 3.2, so long as it provides 90 days' notice to the distributor, Lakeshore here, and pays Lakeshore fair compensation. Notably, under Lakeshore's interpretation, the clause in § 3.3 that provides for the computation of the "fair compensation" to Lakeshore if the agreement has been in place for less than 12 months would conflict with § 3.2's three-year anniversary requirement. Additionally, Lakeshore's reading would also conflict with § 3.3 to the extent that it allows VPX to terminate the agreement "at any time, in its sole discretion."

To the extent that Lakeshore argues that the first clause of § 3.3—"[p]ursuant to the notice provision in Section 3.2"—limits any termination or buyout until after the third anniversary of the agreement, as long as the terminating party provides 90 days' notice, the Court disagrees. As VPX noted in its reply, § 3.2 "contained an identifiable notice provision that [§] 3.3 incorporated by

reference," that is, a 90-day notice provision. Thus, the Court finds that § 3.3 plainly provides that, after providing 90 days' written notice to the Distributor, the "Manufacturer may terminate this Agreement without cause at any time, in its sole discretion, by buying out Distributor's rights." Further, the Court also agrees with the other reasons provided by VPX in its reply that support a reading of the agreement that allows VPX to terminate before the agreement's three-year anniversary by buying Lakeshore out. (D.E. 37, at 1-4).

Accordingly, given the plain meaning of the agreement, VPX's motion to dismiss is granted and Count II is dismissed with prejudice. *See Martinair Holland, N.V. v. Benihana, Inc.*, 780 Fed. Appx. 772, 774-775 (11th Cir. 2019) (affirming district court's dismissal of suit for failure to state a claim where agreement's language unambiguously provided for the early termination of the agreement).

### B. Count III

Next, VPX seeks to dismiss Count III, as it impermissibly seeks to invoke the parol evidence rule when the language of § 3.3 is clear and unambiguous. On the other hand, Lakeshore maintains that § 3.3's introductory clause—"[p]ursuant to the notice provision in Section 3.2"—is ambiguous, that is, it is unclear whether this clause incorporates the 90-day notice provision contained in § 3.2 or § 3.2 in its entirety.

"A contract is not necessarily ambiguous because parties ascribe different meanings to its terms—'[i]f the interpretation urged by one party is unreasonable in light of the contract's plain language, the contract is not ambiguous, and the court may not use extrinsic evidence to vary the terms of the contract.'" *Martinair*, 780 Fed. Appx. at 775 (citing *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008)). Thus, "[p]arol evidence is inadmissible to contradict, vary, or modify the terms which are unambiguously contained within a written agreement." *Prime Homes,*

7

*Inc. v. Pine Lake, LLC*, 84 So. 3d 1147, 1152 (Fla. 4th DCA 2012) (internal citations omitted); *see also Scott v. Carrier Corp.*, 662 Fed. Appx. 798, 803 (11th Cir. 2016) ("[I]t is well-established in Florida that 'if a contract provision is 'clear and unambiguous,' a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract.'") (citing *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. 1st DCA 2005)).

Based on a review of §§ 3.2, 3.3, the Court finds that "[p]ursuant to the notice provision in Section 3.2" plainly and unambiguously incorporates the notice provision within § 3.2, which requires the terminating party to provide "90 days' written notice to the other Party." As a result, § 3.3's introductory clause conditions any termination by the manufacturer without cause via a buyout on the manufacturer providing 90 days' written notice to the distributor. Because the clause is unambiguous, the Court cannot consider extrinsic or parol evidence to vary the terms of the parties' agreement. *Martinair*, 780 Fed. Appx. at 775; *Prime Homes*, 84 So. 3d at 1152. Hence, VPX's motion to dismiss is granted and Count III is dismissed with prejudice.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, VPX's Motion to Dismiss Amended Complaint is granted and Counts II and III are dismissed with prejudice. VPX shall file an answer to the remaining counts in Lakeshore's Amended Complaint **(D.E. 26)**, e.g., Counts I, IV, and V, **by May 20, 2021.**

DONE AND ORDERED in Chambers at Miami, Florida, this __10th__ of May 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record